UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America
ex rel. Fredrick Newell,

          Plaintiff,

v.

City of Saint Paul, Minnesota,

          Defendant.

Civil No. 09-1177 (DWF/TNL)

**MEMORANDUM
OPINION AND ORDER**

_____

Chad A. Blumenfield, and D. Gerald Wilhelm, Assistant United States Attorneys, and Thomas F. DeVincke, Esq., Malkerson Gunn Martin LLP, counsel for Plaintiff United States of America.

Edward P. Sheu, Esq., John T. Sullivan, Esq., Thomas B. Heffelfinger, Esq., Best & Flanagan LLP; Thomas F. DeVincke, Esq., Malkerson Gunn Martin LLP; and Michael Allen, Esq., Relman, Dane & Colfax PLLC, counsel for Relator Fredrick Newell.

David L. Lillehaug, Esq., John W. Lundquist, Esq., Kevin C. Riach, Esq., and Lousene M. Hoppe, Esq., Fredrikson & Byron, PA, counsel for Defendant.

_____

## INTRODUCTION

This matter is before the Court on Defendant's Motion to Dismiss Relator's Complaint (Doc. No. 40). For the reasons set forth below, the Court grants the Motion to Dismiss.

## BACKGROUND

On May 19, 2009, Relator Fredrick Newell ("Newell" or "Relator") initiated this qui tam action under the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, against the

City of Saint Paul ("Defendant" or the "City") on behalf of the government. (Doc. No. 1, Compl.) The government declined to intervene on February 9, 2012. (Doc. No. 35.) Relator then filed a First Amended Complaint on March 12, 2012. (Doc. No. 38, Am. Compl.)

Relator alleges that, from 2003 to 2009, the City submitted fraudulent certifications of Section 3 compliance to the U.S. Department of Housing and Urban Development ("HUD") in order to receive Community Development Block Grants and other federal funds. (*Id.* ¶¶ 1-4.) Section 3 requires that recipients of Section 3 funds provide training and employment opportunities to Section 3 Residents "to the greatest extent feasible." 24 C.F.R. § 135.34(a). Relator specifically alleges that the City failed to comply with Section 3 requirements because the City did not: (1) award sufficient assistance to Section 3 Business Concerns and Residents; (2) adequately oversee hired contractors to ensure compliance with Section 3; (3) implement notification procedures; (4) create targeted training programs; and (5) meet reporting requirements. (Am. Compl. ¶ 17.)

Allegations of the City's noncompliance with Section 3 requirements were first made by James Milsap[1] in a complaint filed with HUD in 1982. (Doc. No. 46, Riach Aff. ¶ 1, Ex. A.) After HUD determined that the City was not compliant, the City entered into a Voluntary Compliance Agreement with HUD. (Riach Aff. ¶ 2, Ex. B.) From 1983 to 1994, Milsap, joined by other plaintiffs, filed three lawsuits against several defendants

---

[1] James Milsap is an area contractor and Section 3 Resident whose bids on contracts for the City were rejected. (Riach Aff. ¶ 5, Ex. E ¶¶ 5, 93(c).)

2

including the City alleging, among other things, noncompliance with Section 3. (Riach Aff. ¶ 7, Ex. G at 2.) In the action filed in December 1983, Milsap alleged racial discrimination resulting in the exclusion of people of color from HUD-funded projects.[2] (Riach Aff. ¶ 4, Ex. D at 7-8.) In the action filed in March 1986, Milsap alleged that HUD had accepted the City's certification of compliance and disbursed funds despite the City's apparent noncompliance and failure to keep required records.[3] (Riach Aff. ¶ 5, Ex. E ¶ 96(13)-(14), (18).) In the action filed in July 1989, Milsap alleged that the City failed to provide notice of opportunities and discriminated against the plaintiffs by refusing to accept their low bids.[4] (Riach Aff. ¶ 10, Ex. J at 6-8.) In that case, the City filed a motion for summary judgment supported by the Affidavit of Jacqui Shoholm, which detailed the City's Section 3 compliance efforts. (Riach Aff. ¶ 9, Ex. I.) On November 12, 1991, summary judgment was granted to the City. (Riach Aff. ¶ 12, Ex. L at 25.)

In June 2000, Relator expressed interest in working as a contractor on HUD-funded City projects, but was informed by a City representative that new contractors were not being added to the City's remodeling contractor list and that HUD

---

[2] In the 1983 action, the court granted summary judgment in favor of the City and other defendants. (Riach Aff. ¶ 4, Ex. D at 8.)

[3] The 1986 complaint was dismissed on *res judicata* grounds based on the outcome of the 1983 case. (Riach Aff. ¶ 4, Ex. D at 13.)

[4] On October 18, 1990, several counts of the 1989 complaint were dismissed on *res judicata* grounds and for failure to state a claim upon which relief may be granted. (Riach Aff. ¶ 7, Ex. G at 25-26.) The remaining counts included the claim against the City based upon 12 U.S.C. § 1701u for violating Section 3 requirements. (*Id.*)

funds would be used to train existing contractors. (Am. Compl. ¶ 17(d); *see also* Doc. No. 49, Newell Decl. ¶¶ 21-23.) From 2001 to 2002, Relator worked on a project to train Section 3 Residents in lead remediation, but was unable to place the trainees on any projects "due to lack of contracting opportunities." (Newell Decl. ¶¶ 25-26; *see also* Am. Compl. ¶ 17(a)-(b).)

From 2001 to 2008, Relator inquired about contracting opportunities and Section 3 compliance with various City and HUD employees. (Newell Decl. ¶¶ 31-32.) During that time, Relator met Edward McDonald, a City employee who was terminated in 2003. (*Id.* ¶ 36.) In 2005, McDonald gave Relator a copy of an internal memorandum, which McDonald had written in 2003, documenting the City's noncompliance with Section 3 requirements. (*Id.* ¶ 39; Riach Aff. ¶ 17, Ex. Q ("McDonald Mem.").) The memorandum had been released to the public in 2003 via a Minnesota Data Practices Act Request and was again disclosed when Relator read it into the record at a 2005 public hearing. (Riach Aff. ¶ 18, Ex. R; Newell Decl. ¶ 39.)

In addition, Relator learned from a letter, dated May 25, 2006, from Assistant City Attorney, Peter J. McCall, that the City had not submitted required Section 3 Summary Reports (HUD Form 60002) to HUD for the years 2001 through 2005. (Am. Compl. ¶ 17(f); *see also* Newell Decl. ¶ 42, Ex. C at 9-10.) Also in May 2006, Relator was informed by City employees that neither the Department of Human Rights nor the Department of Planning and Economic Development collected Section 3 compliance data from City projects. (Am. Compl. ¶ 17(g); *see also* Newell Decl. ¶¶ 46-48, Ex. C at 12.) After learning this, Relator made several requests to HUD under the Freedom of

4

Information Act ("FOIA") for information regarding the City's Section 3 compliance; Relator obtained copies of the City's Applications for Federal Assistance, but was unable to obtain Section 3 Summary Reports as they had not been submitted to HUD.  (Newell Decl. ¶ 49; Riach Aff. ¶ 22, Ex. V.)

On June 26, 2006, Relator, along with other plaintiffs, brought a civil action against the City in the United States District Court for the District of Minnesota alleging violations of Section 3 ("*Nails Construction*").  (Am. Compl. ¶ 37; *see also* Newell Decl. ¶¶ 52-53; Riach Aff. ¶ 24, Ex. X.)  Relator alleged specific violations such as:  lack of a certification process for Section 3 Business Concerns; failure to meet numerical goals; lack of a compliance program; and failure to file Section 3 Summary Reports.  (Am. Compl. ¶ 39; *see also* Riach Aff. ¶ 25, Ex. Y at 7-8.)  Ultimately, the District Court granted the City's motion for summary judgment and dismissed the action for lack of standing.  (Riach Aff. ¶ 26, Ex. Z.)

In November 2007, the City received an audit report from the Hall Legal Team that had been commissioned by the St. Paul City Council to assess the City's efforts to include minorities, women, and people with disabilities in economic development opportunities, and which also evaluated the City's level of compliance with HUD-related laws.  (Riach Aff. ¶ 28, Ex. BB at 25-31.)  The report found that it was "not clear" that the City was following HUD guidelines and recommended that Section 3 Summary Reports be made available to the community.  (*Id.* at 29-31.)  The report also highlighted the requirements of Section 3, including the numerical goals for employment of Section 3 Residents, the inclusion of Section 3 information in contracts, and the creation of records

of good faith efforts and value of contracts awarded to Section 3 businesses. (*Id.*) The report was disclosed to the public on the City's website. (Riach Aff. ¶ 29, Ex. CC at 1.)

In April 2008, Relator filed a complaint with HUD regarding the City's failure to comply with Section 3 requirements. (Am. Compl. ¶ 40; *see also* Newell Decl. ¶ 59, Ex. E.) After receiving the complaint, HUD performed a compliance review and determined that the City was non-compliant with Section 3. (Am. Compl. ¶¶ 41-42; *see also* Newell Decl. ¶ 71, Ex. I.) In February 2010, HUD and the City entered into a Voluntary Compliance Agreement. (Newell Decl. ¶ 75, Ex. J.) The compliance agreement expressly states that it does not release the City from any claims arising under the FCA. (*Id.* at 5.)

In this action, Relator asserts a claim against the City for violations of the FCA. (Am. Compl. ¶¶ 48-50.) The City now moves to dismiss Relator's Amended Complaint pursuant to Rules 12(b)(1), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure. (Doc. No. 40.)

## DISCUSSION

### I. Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City*

6

*of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id.* at 555.  As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Twombly*, 550 U.S. at 556.

## II.  Motion to Dismiss

The City has moved to dismiss Relator's Amended Complaint, arguing that this Court does not have jurisdiction under the FCA over Relator's claim because it is based on publicly disclosed information of which Relator is not an original source. Alternatively, the City asserts that Relator has failed to plead fraud with particularity, and that Relator has failed to state a claim upon which relief may be granted, asserting that Section 3 does not give rise to an FCA claim.  Because the City is entitled to dismissal

7

due to the Court's lack of subject matter jurisdiction, the Court need not reach the City's alternative arguments.

### A. Public Disclosure Bar

The City argues that the public disclosure bar prohibits Relator from pursuing his FCA claim on behalf of the government. The City claims that, because several documents publicly disclosed the fraud at issue, and because Relator does not qualify as an original source, the Court is divested of jurisdiction over this matter.

31 U.S.C. § 3730(e)(4), as it existed at the time Relator filed his original complaint in May 2009, provided:

> (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4) (2006) (amended 2010).[5] For purposes of the present motion, the Court considers the statute as it existed at the time this action was initiated in 2009. *See,*

---

5    31 U.S.C. § 3730(e)(4), as amended in 2010, now provides:
(A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed--
(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;

(Footnote Continued on Next Page)

*e.g.*, *United States ex rel. Estate of Cunningham v. Millennium Labs. of Cal.*, Civ. No. 09-12209-JLT, 2012 WL 259572, at *3 (D. Mass. Jan. 30, 2012), citing *Mullan v. Torrance*, 22 U.S. 537, 539 (1824) ("It is quite clear, that the jurisdiction of the Courts depends upon the state of things at the time of the action brought . . . .").

A court must consider three questions when determining whether a particular qui tam action under the FCA is barred as a result of public disclosures: "(1) Have allegations made by the relator been 'publicly disclosed' before the qui tam suit was brought? (2) If so, is the qui tam suit 'based upon' the public disclosure? and (3) If so, was the relator an 'original source' of the information on which the allegations were based?" *Minnesota Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1042 (8th Cir. 2002). If the Court answers either of the first two questions in the negative, or the third question in the affirmative, the Court has jurisdiction over the action. *Id.*

---

(Footnote Continued From Previous Page)
    (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
    (iii) from the news media, unless . . . the person bringing the action is an original source of the information.
    (B) For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) [sic] who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.
Patient Protection and Affordable Care Act, Pub. L. No. 111–148, § 10104(j)(2), 124 Stat. 119, 901 (2010) (codified as amended at 31 U.S.C. § 3730(e)(4) (Supp. 2010) (effective July 22, 2010)).

9

**1.     Public Disclosures**

In order to bar an FCA claim, the public disclosure must reveal "the critical elements of the fraudulent transaction themselves." *United States ex rel. Hixson v. Health Mgmt. Sys., Inc.*, 613 F.3d 1186, 1188 (8th Cir. 2010); *see also Minn. Ass'n of Nurse Anesthetists*, 276 F.3d at 1044 ("[A] public disclosure must reveal both the true state of facts and that the defendant represented the facts to be something other than what they were."). Additionally, the relator's allegations must be "based upon" the public disclosure. *Minn. Ass'n of Nurse Anesthetists*, 276 F.3d at 1042. "Based upon" means the allegations are "supported by" or are the same as the public disclosure, regardless of where the relator obtained his information. *Id.* at 1045, 1047 ("[T]he phrase 'based upon' is properly understood to mean 'supported by.'") (citation omitted). The City asserts, and the Court agrees, that the allegations made by Relator in this case were "publicly disclosed" before the qui tam suit was filed and that Relator's allegations in this case were "based upon" the public disclosures.

**a.     Milsap HUD Complaint and Lawsuits**

The City identifies a HUD complaint made by James Milsap and the resulting Voluntary Compliance Agreement as two public documents upon which Relator has based this action. (Riach Aff. ¶¶ 1-2, Exs. A-B.) Moreover, the City identifies three lawsuits filed by Milsap alleging noncompliance with Section 3 as prior civil litigation containing similar allegations on which Relator's allegations are based. (Riach Aff. ¶¶ 4-12, Exs. D-L.)

"Substantially similar allegations" from prior litigation fall within the public disclosure bar. *United States ex rel. Feldstein v. Organon, Inc.*, 364 F. App'x 738, 741-42 (3d Cir. 2010). The FCA is designed to encourage whistleblowers with inside knowledge to report fraud, rather than to allow windfalls to relators who repeat allegations from previous litigation. *Hays v. Hoffman*, 325 F.3d 982, 987 (8th Cir. 2003). When the case before a court alleges new fraudulent transactions that are substantially similar to the transactions previously disclosed, the prior allegations "cannot be reanimated simply by complaining that defendants performed the same fraudulent acts in succeeding years." *United States ex rel. Rosales v. S.F. Hous. Auth.*, 173 F. Supp. 2d 987, 997 (N.D. Cal. 2001).

While all three Milsap lawsuits put some focus on racial discrimination, the heart of the allegations in each suit was that the City failed to comply with Section 3 while continuing to accept HUD payments that were conditioned on compliance. (Riach Aff. ¶ 6, Ex. F at 10-11.) The Milsap lawsuits are public disclosures because the allegations were made public in a civil hearing. *See* 31 U.S.C. § 3730(e)(4)(A). While the allegations in the Milsap lawsuits span from 1982 to 1991, and Relator's claim covers the period of time from 2003 to 2009, the underlying assertion that the City accepted HUD funds and failed to comply with Section 3 requirements is substantially similar. (Am. Compl. ¶¶ 2-4.) In essence, Relator is complaining that the City performed the same fraudulent acts in succeeding years; therefore, Milsap's allegations publicly disclosed Relator's qui tam claim. *See Rosales*, 173 F. Supp. 2d at 997.

11

Relator's allegations are also "based upon" the Milsap litigation because Relator makes allegations that are "supported by" Milsap's claims. Specifically, Milsap alleged that the City discriminated against the plaintiffs in the 1986 action "[b]y wilfully [sic] and unlawfully certifying, as a condition precedent to the award of Federal funds, that the City of St. Paul had Equal Housing, [sic] and Equal Employment Programs in place." (Riach Aff. ¶ 6, Ex. F at 10.) Relator similarly alleges that, "[t]hrough . . . false certifications, and through claims for payment or applications for funding which falsely presented the City as being in compliance with its obligations under Section 3, the City improperly received more than $62 million in federal funds." (Am. Compl. ¶ 4.) Additionally, Milsap alleged that the City "wilfully [sic] fail[ed] to examine and enforce the mandatory provisions and obligations which govern the use of the Federal funds," while Relator alleges that "the City knowingly failed and refused to comply with Section 3" and lists several examples of Section 3 requirements for federal funds that the City has failed to meet.[6] (Riach Aff. ¶ 6, Ex. F at 7; Am. Compl. ¶ 17.) Thus, Relator's

---

[6] Relator's Amended Complaint alleges that:
a. The City has not, to the greatest extent feasible, awarded a sufficient percentage of Section 3 covered assistance to Section 3 Business Concerns or Section 3 Residents nor has the City, to the greatest extent feasible, met Section 3's "safe harbor" requirements for the hiring of Section 3 Residents.
b. The City has not, to the greatest extent feasible, exercised oversight over those contractors hired with Section 3 HUD funds to ensure that, to the greatest extent feasible, those contractors provide training, employment and contracting opportunities to Section 3 Residents and Section 3 Business Concerns.
c. The City has not implemented procedures designed to notify Section 3 Residents about training and employment opportunities generated by

(Footnote Continued on Next Page)

allegations in this respect were "publicly disclosed" before he initiated this action and were "based upon" the Milsap public disclosures.

### b.     The McDonald Memorandum

Edward McDonald's 2003 internal memorandum detailed the City's noncompliance with Section 3 and recommended an audit followed by the implementation of training and procedures in order for the City to become compliant. (McDonald Mem. at 8-9.) The report was disclosed publicly via a 2003 Minnesota Data Practices Act request by the Star Tribune and read at a 2005 public hearing by Relator. (Riach Aff. ¶¶ 18-20, Exs. R-T; Newell Decl. ¶ 39.) Consequently, the McDonald memorandum was publicly disclosed before Relator initiated this qui tam action.

Moreover, Relator's allegations are "based upon" the McDonald memorandum because his allegations are supported by the statements contained within the

---

(Footnote Continued From Previous Page)
    Section 3 covered assistance and Section 3 Business Concerns about contracting opportunities generated by Section 3 covered assistance.
    d. The City has not instituted training programs aimed specifically at low-income and very-low income residents as required by Section 3.
    e. The City has not met its reporting requirements under Section 3, because the City failed to sufficiently notify contractors of Section 3 requirements and failed to inform all units of the City of Section 3 Requirements. *See* 24 C.F.R. § 135.32.
    f. The City has failed to submit an annual report summarizing its Section 3 activity (HUD form 60002) to the Assistant Secretary of HUD as required by Section 3. *See* 24 C.F.R. § 135.90(e).
    g. The City has failed to document actions taken to comply with the requirements of 24 CFR Part 135, the results of those actions taken and impediments to compliance. *See* 24 C.F.R. § 135.32(e).
(Am. Compl. ¶ 17.)

memorandum. McDonald specifically indicated that there is "no special provision with any of the developments using federal funds directly or indirectly applying the provision of section 3."[7] (McDonald Mem. at 8.) McDonald further stated that partners "have yet to place one of their recruited employees on any of [the City's] fund assisted housing development projects" and that no Section 3 reports appear to be available for the projects. (*Id.*) Relator relies on this information to allege that the City "has not, to the greatest extent feasible, exercised oversight over those contractors hired with Section 3 HUD funds to ensure that, to the greatest extent feasible, those contractors provide training, employment and contracting opportunities to Section 3 Residents and Section 3 Business Concerns." (Am. Compl. ¶ 17(b).) Relator further alleges that the City "has failed to sufficiently notify contractors of Section 3 requirements" to create employment opportunities for Section 3 Residents. (Am. Compl. ¶ 17(e).) Finally, Relator alleges that the City failed "to submit an annual report summarizing its Section 3 activity," as required by Section 3. (Am. Compl. ¶ 17(f).) Thus, the McDonald memorandum constitutes a prior public disclosure, and Relator's allegations are "based upon" the McDonald memorandum.

### c. *Nails Construction* Litigation

In his 2006 lawsuit, *Nails Constr. Co. v. City of Saint Paul*, Relator alleged that the City was "responsible pursuant to federal law for the administration of Section 3 funds in conformity with federal law" and refused to comply with the requirements of

---

[7]   All contracts covered by Section 3 must contain certain form language specifying the parties' obligations under Section 3. 24 C.F.R. § 135.38.

14

Section 3. (Riach Aff. ¶ 24, Ex. X ¶¶ 36-38.) Like the Milsap allegations, the pleadings in the *Nails Constr. Co.* action constitute public disclosures of Relator's claims in this suit because the allegations were previously disclosed in the course of a public civil hearing. *See* 31 U.S.C. § 3730(e)(4)(A).

Relator's allegations are also "based upon" the *Nails Constr. Co.* allegations because both complaints contain essentially the same allegations regarding the City's failure to comply with Section 3 requirements. The *Nails Constr. Co.* complaint alleged that the City has not: "awarded a sufficient percentage of HUD contracts to Section 3 Business Concerns"; "exercised oversight over those contractors hired with HUD funds"; "met its reporting requirements"; "met its obligation to notify Section 3 Residents about training and/or employment opportunities"; "train[ed] and employ[ed] Section 3 Residents"; "provide[d] preference to Section 3 Residents" or Section 3 Business Concerns; or filed Section 3 Summary Reports. (Riach Aff. ¶ 24, Ex. X ¶ 37.) Relator now alleges that the City has not: "awarded a sufficient percentage of Section 3 covered assistance to Section 3 Business Concerns or Section 3 Residents"; "exercised oversight over those contractors hired with Section 3 HUD funds"; "implemented procedures designed to notify Section 3 Residents about training and employment opportunities"; "instituted training programs aimed specifically at low-income and very-low income residents"; "met its reporting requirements"; or "submit[ted] an annual report . . . (HUD form 60002)." (Am. Compl. ¶ 17.) These allegations are virtually identical to those articulated in his previous suit, in which the City's motion for summary judgment was

granted.  (Riach Aff. ¶ 26, Ex. Z at 10.)  Thus, the *Nails Constr. Co.* litigation included prior public disclosures upon which Relator's current allegations are based.

### d.     FOIA Requests

As part of his investigation into the City's compliance with Section 3 requirements prior to the *Nails Constr. Co.* lawsuit in 2006, Relator made several FOIA requests to HUD for compliance-related documentation.  (Riach Aff. ¶ 22, Ex. V.)  A response to a FOIA request constitutes a "report" and may fall within the public disclosure bar, even if his own personal experience or suspicion caused the relator to begin the investigation. *Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885, 1893-94 (2011).

Relator's allegations are "supported by" the requested records, namely the Applications for Federal Assistance and the lack of Section 3 Summary Reports.  In each Application for Federal Assistance, the City certified that "[i]t will comply with section 3 of the Housing and Urban Development Act of 1968, and implementing regulations at 24 CFR Part 135."  (Newell Decl. ¶ 84, Ex. K at 5, Ex. L at 8, Ex. M at 6, Ex. N at 5.)  Such documents "support" Relator's allegation that "the City's certifications were knowingly false" and "falsely presented the City as being in compliance" and that, "[h]ad HUD not received the City's certification that it would comply with Section 3, HUD would not have provided the City with . . . funds covered by Section 3."  (*See* Am. Compl. ¶¶ 4, 35.) Furthermore, HUD's inability to provide Relator with copies of the requested Section 3 Summary Reports "supports" Relator's allegation that "[t]he city has failed to submit an annual report summarizing its Section 3 activity (HUD form 60002)."  (*See* Am. Compl.

16

¶ 17(f).) Thus, the FOIA requests publicly disclosed Relator's allegations, and Relator's allegations are "based upon" the FOIA requests.

### 2. Original Source

The public disclosure bar may be avoided if Relator is an original source of the information on which the allegations are based. To qualify as an original source, "the relator's knowledge of the information must be (1) direct and (2) independent, and (3) the relator must have voluntarily provided the information to the Government before filing suit." *Minn. Ass'n of Nurse Anesthetists*, 276 F.3d at 1042-43. The FCA "seeks to encourage persons with first-hand knowledge of fraudulent misconduct . . . or those who are either close observers or otherwise involved in the fraudulent activity to come forward." *United States ex rel. Barth v. Ridgedale Elec., Inc.*, 44 F.3d 699, 703 (8th Cir. 1995) (internal citations and quotations omitted); *see United States ex rel. Kinney v. Stoltz*, 327 F.3d 671, 674 (8th Cir. 2003). An individual who receives second-hand information from a person having direct knowledge of the asserted fraud does not have direct knowledge himself. *Barth*, 44 F.3d at 703. A relator need not have personal knowledge of all of the elements of a claim, however, to qualify as an original source. *Minn. Ass'n of Nurse Anesthetists*, 276 F.3d at 1050. Still, collecting information from a variety of sources and recognizing the legal significance of the information does not qualify a relator as an original source if the information was available to anyone who chose to look for it. *United States ex rel. Anti-Discrimination Center of Metro N.Y., Inc. v. Westchester Cnty.*, 495 F. Supp. 2d 375, 380 (S.D.N.Y. 2007); *see Schindler Elevator Corp.*, 131 S. Ct. at 1894.

While Relator did personally obtain some information regarding the City's Section 3 program, the information on which Relator bases his fraud claim was acquired second-hand, from other sources and prior public disclosures. The essential elements of Relator's FCA claim can be found in the documents created by, and the statements of, City employees, including the letter from Assistant City Attorney Peter J. McCall, the City's Applications for Federal Assistance, and the McDonald memorandum. (Newell Decl. ¶¶ 34, 84, Exs. C at 10 & K-N; McDonald Mem. at 8-9.) Relator's continued complaints to City and HUD employees regarding the City's Section 3 practices notwithstanding (Newell Decl. ¶¶ 31-34, 59), it was ultimately HUD, pursuant to a 2009 compliance review conducted by its Office of Fair Housing and Equal Opportunity, that determined that the City had failed to comply with Section 3 requirements (Newell Decl. ¶ 71, Ex. I). Relator's own contributions are limited to: relaying public information to HUD and City employees to instigate investigations; and recognizing the alleged fraud after compiling information gathered from others. (*See* Newell Decl. ¶¶ 34 & 59, Exs. C & E.) Such contributions do not qualify him as an original source because the information was available to anyone who chose to look for it.

Relator is not the "original source" of any of the public disclosures upon which his FCA claim is based. Relator does not have direct or independent knowledge of the Milsap allegations. Instead, he relies upon information, revealed during the course of litigation, that was obtained from City employees with direct knowledge of the alleged fraud (such as the Shoholm Affidavit detailing the City's Section 3 compliance efforts). Nor does Relator have direct or independent knowledge of the information contained

within the McDonald memorandum because that document, and the information it contains, was acquired second-hand from McDonald after McDonald evaluated the City's level of Section 3 compliance. In addition, Relator does not have direct or independent knowledge of the allegations in the *Nails Constr. Co.* case because those allegations are also based upon information Relator obtained second-hand from City and HUD employees with direct knowledge of the alleged fraud.[8] Finally, Relator does not have direct or independent knowledge of the responses to his FOIA requests because the documents requested were generated by the City and HUD and were only made available to Relator via public disclosure. Thus, Relator is not an "original source" of any of the information on which Relator's allegations are based.

For the above reasons, the Court concludes that Relator's allegations were "publicly disclosed" prior to this suit, his allegations were "based upon" the prior public disclosures, and Relator was not an "original source" of the pertinent information. Thus, the public disclosure bar prohibits Relator's FCA claim from proceeding, and this Court is divested of jurisdiction pursuant to 31 U.S.C. § 3730(e)(4). Consequently, the Court grants the City's motion to dismiss.[9]

---

[8] Notably, the *Nails Constr. Co.* court concluded that neither Relator nor his business had "experienced an injury in fact that [was] fairly traceable to the City" resulting from the City's alleged violations of Section 3, and thus dismissed the complaint for lack of standing. (Riach Aff. ¶ 26, Ex. Z at 4-5.)

[9] In its notice of election to decline intervention, the Government asked the Court to seek the written consent of the Attorney General before ruling on a request by the City or Relator to dismiss this action. (Doc. No. 35, citing 31 U.S.C. § 3730(b)(1).) The Court notes, however, that "the Attorney General's consent is required only where the relator

(Footnote Continued on Next Page)

**ORDER**

Based upon the foregoing, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss Relator's Complaint (Doc. No. [40]) is **GRANTED**.

2. Relator's First Amended Complaint (Doc. No. [38]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 20, 2012              s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge

---

(Footnote Continued From Previous Page)
seeks a voluntary dismissal . . . ." *United States ex rel. Shaver v. Lucas W. Corp.*, 237 F.3d 932, 934 (8th Cir. 2001) (not requiring the Attorney General's consent where the district court granted the defendant's motion to dismiss for failure to state a claim).